FILED
12/21/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JUDGE ELLIS
MAGISTRATE JUDGE JANTZ
SMB
23CR654
Dec 21, 2023

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARIN TCHALAKOV | No.<br><br>Violation: Title 18, United States Code, Section 1343 |

The ACTING UNITED STATES ATTORNEY charges:

1. At times material to this information:

### The Small Business Administration

a. The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

### The Paycheck Protection Program

b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

d. To obtain a PPP loan, a business submitted a PPP loan application, which was signed by the applicant or an authorized representative of the

business. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business. In the application, businesses were required to provide, among other things, their number of employees and average monthly payroll. This figure was used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were also required to make good faith certifications, including those economic uncertainties had necessitated their loan requests for continued business operations.

      e.      PPP loan proceeds were required to be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA if the business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

      f.      To gain access to funds through the PPP, businesses applied to financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

      g.      Businesses that obtained PPP loans and used the full loan amount were allowed to obtain additional funds through the PPP by submitting a Second Draw Borrower Application Form ("Second Draw Application"), which was signed by the applicant or an authorized representative of the business. The Second Draw Application required the applicants to again acknowledge the program rules

2

and make certain affirmative certifications regarding the eligibility of the business, and again provide their number of employees and average monthly payroll. These figures were again used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were again required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations and that the applicants had used the full amount of the initial PPP loan only for eligible expenses.

  h. Participating lenders required applicants for PPP loans to provide truthful information about the business and its owner, including truthful information about the applicant's payroll, income, operating expenses, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

### *Entities*

  i. D&A Freight, Inc. was an Illinois corporation, incorporated on or about May 8, 2020.

  j. MTM Trans, Inc., was an Illinois corporation that, after being involuntarily dissolved, was reinstated in or around June 2020.

  k. MPT Logistics, Inc., was an Illinois corporation that, after being involuntarily dissolved, was reinstated in or around June 2020.

*Defendant*

l.  Defendant MARIN TCHALAKOV was a resident of Palos Park, Illinois. He was the owner and registered agent of D&A Freight, Inc.; MTM Trans, Inc.; and MPT Logistics, Inc.

*Lenders*

m.  Lender A was a financial institution that funded PPP loans to approved borrowers.

n.  Lender B was a financial institution that funded PPP loans to approved borrowers and was headquartered in Minnesota. Its servers were located outside of the state of Illinois.

**Bank C**

o.  Defendant was the sole signatory of an account at Bank C. Bank C's servers were located in the state of Illinois.

**The Scheme to Defraud**

2.  Beginning in or around March 2020 and continuing through at least in or around February 2022, in the Northern District of Illinois, and elsewhere,

MARIN TCHALAKOV,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PPP funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.  It was part of the scheme that MARIN TCHALAKOV (the "defendant"),

4

for the purpose of fraudulently obtaining approximately $1,313,407 in PPP funds, submitted approximately four applications for loans under the PPP Program, on behalf of businesses and entities purportedly owned and operated by the defendant, including D&A Freight, Inc., MTM Trans, Inc., and MPT Logistics, Inc., (together, the "Fictitious Entities"); which applications contained materially false statements and misrepresentations concerning, among other things, the purported entities' number of employees, gross revenues, payroll, operating expenses, type of business, and existence as companies with ongoing operations.

4. It was further part of the scheme that MARIN TCHALAKOV prepared, and submitted to Lenders A and B (together, the "Lenders"), PPP loan applications on behalf of the Fictitious Entities, in which applications the defendant falsely and fraudulently represented that the Fictitious Entities were businesses that employed a specified number of employees, paid a specified average monthly payroll, and were in operation on February 15, 2020; that he was not the owner, or involved with the management, of any other business; that all PPP loan proceeds would be used only for business related purposes; and that the information provided in the applications and all supporting documents and forms was true and accurate in all material respects. As the defendant knew at the time, the Fictitious Entities had no employees or payroll and were not in operation on February 15, 2020; defendant was the owner, officer and agent of at least three purported businesses; and he intended to use the loan funds for his personal use and benefit.

5. It was further part of the scheme that, to substantiate the claimed number of employees and payroll of the Fictitious Entities, MARIN TCHALAKOV prepared, and submitted to the Lenders, false wage summary reports and copies of false IRS and state-of-Illinois tax filings (including IRS and Illinois Forms 941) that fraudulently represented that the Fictitious Entities had paid specified numbers of employees various amounts in wages during tax years 2019 through 2021. The defendant knew at the time that the Fictitious Entities had no payroll or employees for which federal or state taxes were paid during those periods.

6. It was further part of the scheme that, to substantiate his representations that MTM Trans and MPT Logistics were businesses with ongoing operations and payroll, MARIN TCHALAKOV prepared, and submitted to the Lenders, copies of falsified bank account statements that fraudulently represented that MTM Trans and MPT Logistics had earned revenue and incurred payroll expenses in the months preceding their respective loan applications. The defendant knew at the time that MTM Trans and MPT Logistics had not earned revenue or incurred payroll expenses in those months, and that he had fraudulently changed the identifying information on authentic bank account statements for other companies, along with other information, to match the identifying information for MTM Trans and MPT Logistics.

7. It was further part of the scheme that MARIN TCHALAKOV opened multiple business bank accounts in the names of the Fictitious Entities, and directed at least one Lender to deposit the proceeds of a fraudulently obtained PPP loan into

one of those bank accounts, which the defendant controlled. The defendant opened these accounts in the names of those entities to induce the SBA, the Lenders, and others to falsely believe that the accounts belonged to legitimate and operational businesses.

8. It was further part of the scheme that MARIN TCHALAKOV registered and incorporated the Fictitious Entities with the Illinois Secretary of State, identifying himself in filings as an officer and agent of those entities. The defendant knew that these entities were not in operation at the time he registered and incorporated them, and had no intention to initiate any business operations under those entities' names.

9. It was further part of the scheme that, through the submission of the false and fraudulent PPP loan applications, MARIN TCHALAKOV caused the Lenders to disburse approximately $1,313,407 in PPP loan proceeds into bank accounts that he controlled.

10. It was further part of the scheme that MARIN TCHALAKOV used the PPP funds that the Lenders disbursed based on the fraudulent PPP applications to make cash withdrawals, to purchase goods and services, and to transfer funds to his personal investment accounts and his wife's personal accounts, all for his personal use and benefit.

11. It was further part of the scheme that MARIN TCHALAKOV misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and

hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

12. On or about May 4, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere, MARIN TCHALAKOV, defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted, by means of wire communication, in interstate commerce, certain writings, signs, and signals, namely, a transfer of PPP loan proceeds in the amount of $335,882, from Lender B, to defendant's account at Bank C, with an account number ending in 6612:

In violation of Title 18, United States Code, Section 1343.

# FORFEITURE ALLEGATION

The United States Attorney further alleges:

Upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in this Information, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

1. The property to be forfeited includes, but is not limited to:

    a. a personal money judgment in the amount of approximately $1,313,407.

2. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

MICHELLE PETERSEN
Digitally signed by MICHELLE PETERSEN
Date: 2023.12.20 20:45:01 -06'00'

Signed by Michelle Petersen, on behalf of
MORRIS PASQUAL
ACTING UNITED STATES ATTORNEY